# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID D. INGWERSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **8:09CV249** |
| vs. | ) | |
| | ) | **ORDER** |
| PLANET GROUP, INC. and | ) | |
| WEST PARTNERS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| PLANET GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **8:09CV263** |
| vs. | ) | |
| | ) | **ORDER** |
| DAVID D. INGWERSEN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Rule 11 Motion for Sanctions filed by West Partners, LLC ("West") against David D. Ingwersen.  Ingwersen's fifth cause of action (Doc. 1 in 8:09-cv-249, Complaint ¶¶ 39, *et seq*.) is a claim against West for tortiously interfering with Ingwersen's business expectancies  and rights under various contracts or agreements he made with Planet Group, Inc.  West's activities allegedly resulted in delaying the release of a $1 million certificate of deposit pledged by Ingwersen as collateral for a loan made by Mutual of Omaha Bank to Planet Group.

The motion is denied.

## BACKGROUND

No evidentiary materials were submitted in conjunction with the pending motion.  For purposes of obtaining the factual background of this dispute, the court has taken judicial notice of the court files, including the applicable pleadings and the exhibits attached thereto.

David Ingwersen originally owned all of the outstanding stock of a business called OptiCard Payment Services, Inc.  OptiCard owed Ingwersen $38,000 under a promissory note.

On November 28, 2007, Ingwersen transferred his OptiCard shares to defendant Planet Group, Inc. for $2,125,000 pursuant to a "Share Purchase Agreement."  The Share Purchase Agreement also contemplated payment to Ingwersen of a $125,000 "Earn Out" for the year ended December 31, 2008; the transfer to Ingwersen, upon closing, of 150,000 shares of Planet Group's common capital stock Series A Voting Common Stock; and the execution of an Employment Agreement whereby Planet Group would employ Ingwersen through December 31, 2009 at a salary of $12,500 per month.  The transaction closed on January 1, 2008.

In late June or early July 2008, Planet Group asked Ingwersen to enter into an agreement with Mutual of Omaha Bank ("Mutual") to pledge additional collateral for two loans made by Mutual to Planet Group.  On July 7, 2008, Planet Group received two loans from Mutual in the original principal amounts of $2 million and $680,000.  Ingwersen executed two documents on July 7, 2008, assigning to Mutual a $1 million certificate of deposit (the "Assignment Agreement") and a brokerage account (the "Commercial Pledge Agreement") as additional collateral for Mutual's loans to Planet Group.  Planet Group and Ingwersen also executed a Warrant Agreement giving Ingwersen the right to purchase 280,000 fully paid and nonassessable shares of Planet Group's Series A Voting Common Stock commencing July 7, 2008 and ending July 3, 2018.

In consideration of Ingwersen's signing the Warrant Agreement, Planet Group, through its officer/director Michael R. Wofford, agreed to use its best effort (the "Best Effort Agreement") to work with Mutual of Omaha Bank to get Ingwersen's pledged collateral released from Mutual by December 31, 2008.  Planet Group's best efforts would include, but were not limited to, renegotiation of borrowing terms, replacement of collateral, or use of proceeds from additional equity, debt or sale of assets.  Ingwersen alleges that Wofford also represented that Planet Group was in the process of developing a private placement offering ("PPO"), the underwriter was completing the offering documents, the PPO would be completed by the end of 2008, and the funds to be obtained from the PPO would be used to cause the release of Ingwersen's $1 million certificate of deposit as collateral to Mutual.  Finally, Planet Group allegedly granted Ingwersen certain special rights to attend meetings of its board of directors as an "observer."

Defendant/movant West Partners, LLC is a creditor and shareholder of Planet Group. According to Ingwersen, West Partners "orchestrated" a change in the composition of the board of directors of Planet Group.  By and through its principal officer and agent, Dennis O'Brien, West Partners assumed direct management and control of the operations of Planet Group.  During 2009, Michael Wofford was replaced as officer and director of Planet Group and the PPO was cancelled.

Ingwersen alleges at paragraph 16 of the Complaint that, prior to 2009, another entity was the first priority secured creditor of Planet Group.  Before Ingwersen assigned $1 million certificate of deposit to Mutual of Omaha Bank, Planet Group allegedly promised Ingwersen that this entity's obligation would be paid off and Mutual would become first in line of Planet Group's secured creditors.  West Partners, however, bought out this entity's interest and substituted itself as Planet Group's first priority secured creditor.

-3-

In response, West alleged at paragraph 16 of its Answer that the loans made to Planet Group by Mutual of Omaha Bank were extended into 2010 pursuant to a Loan Modification Agreement executed April 14, 2009 by Planet Group, West, and Mutual.  Ingwersen was not a party to this agreement.  The Loan Modification Agreement reflects that Planet Group asked Mutual to extend the maturity date of the July 7, 2008 promissory note and release Mutual's security interest in Ingwersen's brokerage account.  Mutual agreed to the extension in exchange for an immediate cash payment of $350,000 from Planet Group and the agreement of West to enter into a Subordination Agreement "pursuant to which West will subordinate certain indebtedness payable from Planet to West[1] to certain indebtedness payable from Planet to Mutual[2]."  (Doc. 18-4 at p. 1).

On or about April 20, 2009, Ingwersen was terminated without cause from his employment with Planet Group.  On May 28, 2009, Dennis O'Brien (acting as the principal officer and agent for West Partners, and director of Planet Group) caused Ingwersen to be excluded from meetings of the board of directors of Planet Group, and caused Planet Group to withhold from Ingwersen the observation rights he was allegedly promised on July 7, 2008.

Ingwersen's complaint was filed on July 23, 2009.  West answered on October 7, 2009.  On October 30, 2009, West filed a Notice that it had served Ingwersen with a Rule 11 Motion for Sanctions, in compliance with the "safe harbor" provision of Fed. R. Civ. P. 11(c)(2)[3].

---

[1]The April 14, 2009 Subordination Agreement recites that West was the sole owner and holder of a promissory note in the principal amount of $1,109,627.85 dated September 30, 2006, issued by Planet Group in favor of ACI Worldwide Corp.  The Best Effort Agreement indicates that "Applied Communications Worldwide" was a secured lender.

[2]The July 7, 2008 promissory notes issued by Planet Group in favor of Mutual.

[3]Under Fed. R. Civ. P. 11(c)(2), a motion for Rule 11 sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Thus, the moving party must serve its motion for Rule 11 sanctions at least 21 days before filing the

West filed its Rule 11 Motion on November 30, 2009.

## DISCUSSION

"Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003). "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, ... streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The rule imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings. *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553-54 (1991). The applicable standard is one of "reasonableness under the circumstances." *Id.* at 551; *see also Isakson v. First Nat. Bank, Sioux Falls*, 985 F.2d 984, 986 (8th Cir. 1993); *Pulaski County Republican Comm. v. Pulaski County Bd. of Election Comm'rs*, 956 F.2d 172, 173 (8th Cir. 1992); *Ringsred v. City of Duluth*, 187 F. Supp. 2d 1141, 1166 (D. Minn. 2001).

A party may not continue to advocate claims upon learning of their legal deficiencies or lack of merit, *TEGG Corp. v. Beckstrom Elec. Co.*, 2008 WL 5216169 at *5, Case No. 08-435 (W.D. Pa. Dec. 10, 2008), and the court may impose sanctions under Rule 11 if the

---

motion with the district court, so as to allow the non-moving party an opportunity to change the objectionable pleadings to prevent the imposition of sanctions. *See Gordon v. Unifund CCR Partners*, 345 F.3d 1028 (8th Cir. 2003); *Mattes v. Butterball, LLC*, 2007 WL 2407031, No. 4:07CV3130 (D. Neb., Aug. 20, 2007); *Elmowitz v. Executive Towers at Lido, LLC*, 571 F. Supp. 2d 370, 381 (E.D.N.Y. 2008).

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, *after receiving the motion*, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.

*Gordon v. Unifund CCR Partners*, 345 F.3d at 1029 (quoting Fed. R. Civ. P. 11, Advisory Committee Notes to the 1993 Amendments; emphasis added by the court).

advancement of a claim is unsupported by the facts and law.  *Twite v. Amerquest Mortg. Co.*, *2006 WL 839504*, Case No. 05-2210 (D. Minn. Mar. 29, 2006).

"In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action....  Rather, the court determines 'a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.'" *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417 (S.D.N.Y. 2003) (*quoting  Cooter & Gell v. Hartmarx Corp.*, 496 U.S. at 396).  The burden of proof and persuasion rests on the party moving for sanctions.  *TEGG Corp.*, 2008 WL 5216169 at *3; *see also Phinney v. Paulshock*, 181 F.R.D. 185, 197 (D.N.H. 1998).

Under Nebraska law, "[i]n order to be actionable, interference with a business relationship must be both intentional and unjustified." *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 275 Neb. 642, 664, 748 N.W.2d 626, 645 (2008).

> In order to establish a claim for tortious interference with a business relationship or expectancy, a claimant must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *See Aon Consulting v. Midlands Fin. Benefits*, 275 Neb. 642, 748 N.W.2d 626 (2008).
>
> One of the basic elements of tortious interference with a business relationship requires an intentional act which induces or causes a breach or termination of the relationship. *See id.* An intentional, but justified, act of interference will not subject the interferer to liability. *See Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991) (citing and clarifying *Miller Chemical Co., Inc. v. Tams*, 211 Neb. 837, 320 N.W.2d 759 (1982)). *See, also,* Restatement (Second) of Torts § 770 (1979).

*The Lamar Co., LLC v. City of Fremont*, 278 Neb. 485, 497, 771 N.W.2d 894, 905-06 (2009).

Factors to consider in determining whether interference with a business relationship is "improper" include: (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties.

"The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors."

*Aon Consulting*, 275 Neb. at 663-64, 748 N.W.2d at 645 (quoting *Huff v. Swartz*, 258 Neb. 820, 828-29, 606 N.W.2d 461, 467-68 (2000), in turn quoting Restatement (Second) of Torts 767, comment *b* (1979)).

In summary, Ingwersen's complaint alleges that West tortiously interfered with his rights under the Best Efforts Agreement and other business expectancies by:

– Substituting itself as first priority creditor for the existing first priority creditor of Planet Group,

– causing Planet Group to cancel the promised PPO that would have secured funds to obtain release of Ingwersen's pledged collateral with Mutual

– causing the removal of Planet Group's President, Michael R. Wofford, and causing the Best Efforts Agreement executed by Wofford on behalf of Planet Group to be breached, and

– causing the right of Ingwersen to attend board meetings of Planet Group to be terminated.

Ingwersen alleges that, due to the tortious interference, West's position as later but higher priority creditor should be equitably subordinated to the position of Mutual that is secured by plaintiff's $1 million pledge.  He claims damages against West in the amount of $1 million, plus $70,000 in interest.  (Doc. 1, 8:09cv249, Complaint at ¶¶ 39-41).

In its motion, West advises the court that"[t]he filing and maintenance of Ingwersen's Complaint against West is frivolous pursuant to Rule 11(b)(2) because his claims, defenses, and other legal contentions are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Relying exclusively on the pleadings and the conclusions drawn in its own Rule 11 Motion and briefs (*see* 8:09cv249, Doc. 26, West's Reply Brief at p. 2), West maintains that its acts of interference were justified; therefore, it cannot be held liable for tortious interference.  West also informs the court that Ingwersen "will not have evidentiary support for his factual assertions against West after a reasonable opportunity for further investigation or discovery."  Citing *Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig*, 247 Neb. 547, 529 N.W.2d 33 (1995), West further concludes that Ingwersen's tortious interference claim should be dismissed pursuant to Rule 11 because Nebraska law requires a showing of bad faith or malice, and West denied in its answer that it acted maliciously or in bad faith.

In its reply brief, West emphasizes that when it bought out Planet Group's first secured creditor, it made an equity contribution to Planet Group, pursuant to the April 14, 2009 Loan Modification Agreement, in order to prepay a loan from Mutual and procure the release from Mutual of Ingwersen's brokerage account.  West appears to argue that the very fact of the April 14, 2009 Subordination Agreement insulates it from any liability for tortious interference in

Ingwersen's business dealings with Planet Group and renders Ingwersen and his attorneys liable under Rule 11.  (*See* 8:09cv249, Doc. 26, West's Reply Brief at pp. 2-3).

Again, West's Rule 11 motion is based entirely on the contents of the pleadings and its own legal conclusions.  In response to Ingwersen's complaint, however, West elected to file an answer.  West did not challenge the legal sufficiency of Ingwersen's tortious interference claim pursuant to Fed. R. Civ. P. 12(b)(6) or 12(c) but instead leapt forward with a Rule 11 motion based solely on its own defense theories.

While it is possible that Ingwersen may not prevail on his claim against West Partners, such a possibility does not establish that Ingwersen's attorneys abused the judicial process or that Ingwersen's tortious interference claim is "so baseless as to warrant Rule 11 sanctions." *See, e.g., Executive Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 571 (8th Cir. 2008).

## ORDER

Because West failed to meet its burdens of proof and persuasion on its motion,

**IT IS ORDERED** that the Rule 11 Motion for Sanctions filed by West Partners, LLC is denied.

A party may object to this order by filing an "Objection to Magistrate Judge's Order" within 14 days after being served with the order.  The objecting party must comply with all requirements of NECivR 72.2.

**DATED August 23, 2010.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**

-9-