## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID D. INGWERSEN, | ) | CASE NO. 8:09CV249 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| PLANET GROUP, INC., and WEST PARTNERS, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| ——————————————— | ) | |
| | ) | |
| PLANET GROUP, INC., | ) | CASE NO. 8:09CV263 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID INGWERSEN, | ) | |
| | ) | |
| Defendant, | ) | |
| ——————————————— | ) | |
| | ) | |
| PLANET GROUP, INC., | ) | CASE NO. 8:10CV453 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID INGWERSEN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motions for Summary Judgment (Filing Nos. 61, 158)[1], the Motion in Limine (Filing No. 118) and the Objection to the Exhibit List (Filing No. 120) filed by Plaintiff/Defendant David Ingwersen.  Also before the Court are the

---

[1] Unless otherwise noted, all references to docket filing numbers are to those in the lead case among these consolidated actions, Case No. 8:09CV249.

Motions in Limine (Filing Nos. 109, 165) filed by Planet Group, Inc., and West Partners, LLC. For the reasons discussed below, the Motions for Summary Judgment will be granted, and Case No. 8:09CV263 and Case No. 8:10CV453, will be dismissed, with prejudice. Further, the Motions in Limine and Objections to Exhibits, to the extent applicable to Cases No. 09CV263 and No. 10CV453, will be denied as moot.

## BACKGROUND

The Parties' Statements of Undisputed Facts, supporting evidence, and corresponding responses, show that the following facts are not in dispute.

David D. Ingwersen ("Ingwersen") is a resident of Maricopa County, Arizona. Planet Group, Inc. ("Planet"), is a Nebraska corporation with its principal place of business in Omaha, Douglas County, Nebraska. Defendant West Partners, LLC ("West") is a California limited liability company, qualified to do business in Nebraska. Ingwersen and Planet entered into a Share Purchase Agreement ("SPA") dated November 28, 2007, with an effective date of "Closing" of January 1, 2009 (hereinafter, the "Closing"). Through the SPA, Planet generally acquired shares of stock and certain intellectual property of Opticard Payment Systems, Inc. ("Opticard"), which Planet wanted to use with Planet's existing technology. Ingwersen and Planet also entered into an employment agreement contemporaneous with the SPA (the "Employment Agreement").[2]

On April 20, 2009, Ingwersen was terminated by Planet. Upon termination, Planet tendered a severance agreement to Ingwersen that was never executed. On May 28,

---

[2] Planet's alleged breaches of the Employment Agreement are the subject of Case No. 8:09CV249, and are analyzed in the forthcoming Memorandum and Order on Planet's Motion for Partial Summary Judgment (Filing No. 75) in that case. West's involvement is limited to that case.

2009, Planet notified Ingwersen that it was making an indemnification claim against him

under Section 9.1(a) of the SPA as a result of alleged inaccuracy of representations and

warranties regarding financial statements, accounts receivable, and customers.  The notice

stated:

> The purpose of this letter is to respond to Mr. Howard's May 21, 2009 letter
> and to provide formal notice from Planet Group, Inc. ("Buyer") to David
> Ingwersen ("Seller"), of Buyer's indemnification claims pursuant to Section
> 9 of the Share Purchase Agreement, dated as of November 28, 2007.
>
> . . .
>
> Buyer is making a claim pursuant to Section 9.1(a) of the [SPA] as a result
> of the inaccuracy of the representations and warranties regarding the
> Company's financial statements, accounts receivable and customers set
> forth in Sections 3.6, 3.19 and 3.24 of the [SPA].  Buyer is also making a
> claim as a result of Seller's breach of the covenants contained in Section 5.5
> of the [SPA].

(Filing No. 63-9 at 1.)

The record is not clear as to whether Ingwersen was notified of any claimed breach

of the SPA prior to May 28, 2009.  Planet filed its Complaint in Case 8:09CV263 on July

15, 2009, in the District Court of Douglas County, Nebraska.  Ingwersen timely removed

Planet's Complaint under 28 U.S.C. §§ 1441(a) and 1446 to this Court on August 4, 2009.

In its Complaint, Planet alleges breach of several representations and warranties under the

SPA.  Section 3 of the SPA lists the representations and warranties of Ingwersen under

the SPA, and the introduction states as follows:

> Section 3.  Representations and Warranties of the Seller
>
> [Ingwersen] hereby represents and warrants to [Planet] as follows, subject
> to the exceptions specifically disclosed in writing in the disclosure schedule
> (referencing the applicable paragraph and section of this [SPA]) supled by
> [Ingwersen] to [Planet] on or prior to, and dated as of the date hereof (the
> "Seller Disclosure Schedule").  However, nothing in the Seller Disclosure

3

Schedule shall be deemed adequate to disclose an exception to a representation or warranty made herein, unless the Seller Disclosure Schedule identifies the exceptions with reasonable particularity and describes the relevant facts in reasonable detail. Without limiting the generality of the foregoing, the mere listing (or inclusion of a copy) of a document or other item shall not be deemed adequate to disclose an exception to a representation or warranty made herein (unless the representation or warranty has to do with the existence of the document or other item itself). The Seller Disclosure Schedule will be arranged in paragraphs corresponding to the numbered (sub)sections contained in this Section 3. Disclosure made in a specific section shall not be deemed to have been disclosed with respect to any other section unless an explicit cross-reference appears.

(Filing No. 63-4 at 6, 17-18, 19.)

In Case No. 09CV263, Planet also claims that Ingwersen violated Section 5.5 of the SPA by causing Opticard to pay legal fees and accountants' fees arising from the SPA. Section 5.5 states:

5.5 Fees and Expenses. [Ingwersen] will pay all costs and expenses incurred by [Ingwersen] or [Opticard] in connection with the transactions contemplated by this [SPA] (including, without limitation, attorneys' and accountants' fees and expenses). [Planet] shall bear all such costs and expenses incurred by it in connection with the transactions contemplated by this [SPA].

The Complaint also lists claims for breach of duty of good faith and fair dealing, unjust enrichment, and promissory estoppel. The Complaint in Case No. 8:10CV453 is essentially identical, though it identifies different reasons for breach of the warranties and representations. It does not allege a violation of Section 5.5. The Complaint in 8:10CV453 was filed on December 8, 2010, in the District Court of Douglas County, Nebraska. Ingwersen timely removed that Complaint under 28 U.S.C. §§ 1441(a) and 1446 to this Court on December 13, 2010. Part of the basis for Ingwersen's Motions for Summary Judgment is that Planet's claims are barred by the SPA. Ingwersen argues that several of his obligations were subject to the satisfaction of Planet at or before Closing. Further,

4

Ingwersen asserts that Planet's claim for breach is not permitted by the indemnification section of the SPA.

### STANDARD OF REVIEW

A court should grant a motion for summary judgment "if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Fu. v. Owens*, 622 F.3d 880, 882 (8th Cir. 2010) (citing *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007)). The proponent for a motion for summary judgment "'bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgersen v. City of Rochester*, 605 F.3d 584, 594 (8th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In response to the proponent's showing, the opponent has an "obligation to come forward with specific facts showing that there is a genuine issue for trial." *Dahl v. Rice Cnty. Minn.*, 621 F.3d 740, 743 (8th Cir. 2010) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "[T]he nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010) (quoting *Matsaushita Elec. Indus. Co.*, 475 U.S. at 586).

"The construction of a contract is a matter of law." *Misle v. HJA*, 674 N.W.2d 257, 264 (Neb. 2004). Where issues involve contractual interpretation that can be resolved by

5

the terms of the parties' agreement, they are particularly appropriate for disposition by summary judgment. *Id.*

## DISCUSSION

Ingwersen claims that cases 8:09CV263 and 8:10CV453 should be dismissed because Planet's claims for breach of representations and warranties did not survive the Closing of the SPA. Although the parties agree that the SPA is governed by Nebraska law, they have referred the Court to no Nebraska authority on the specific questions of construction before the Court, nor has this Court on its own initiative discovered any. Accordingly, the Court has considered persuasive authority from other jurisdictions in its effort to determine how the highest court of the state of Nebraska would construe the SPA.

Ingwersen claims that the warranties and representations in the SPA are analogous to those in the Ninth Circuit case, *Western Filter Corp. v. Argan, Inc.*, 540 F.3d 947 (9th Cir. 2008). The Ninth Circuit stated that warranties and representations are statements of fact at the time of execution of the agreement, and "the truthfulness of the representations and warranties as of both the date of execution and, when appropriate, the date of the closing is generally a condition to the closing." *Id.* at 952 (quoting Samuel C. Thompson, Jr., *Business Planning for Mergers and Acquisitions* 780 (Carolina Academic Press 2001) (1997)). The agreement analyzed by the Ninth Circuit contained the following condition to closing:

> The representations and warranties of [the warrantor] under this Agreement shall be true and correct in all material respects as of the date of the Closing with the same effect as though made on and as of the date of the Closing.

*Id.* at 952 n. 6.

6

The court stated that the purpose of such clauses is to ensure that if "prior to closing, either the seller or buyer discovers that a representation or warranty made by the other party is not true, they have grounds for backing out of the deal." *Id.* The Ninth Circuit concluded that based on the language of the agreement in that case, the "closing date itself triggers the contractual limitation on liability." *Id.* The court determined that "[u]nless the parties agree to a survival clause – extending the representations and warranties past the closing date – the breaching party cannot be sued for damages post-closing for their later discovered breach."[3] *Id.*

Ingwersen contends that the parties expressly agreed in the SPA that representations and warranties were a condition of *closing.* Ingwersen also states that the

---

[3] Planet argues that this statement was not part of the Ninth Circuit's decision but merely a recitation of one party's theory. This is inaccurate. The entire paragraph reads:

> The closing date itself triggers the contractual limitation on liability. Unless the parties agree to a survival clause – extending the representations and warranties past the closing date – the breaching party cannot be sued for damages post-closing for their later discovered breach. With that premise in mind, Argan reasonably argues that the one-year limitation in the Survival Clause was intended to serve as a contractual time limit on any action brought based on a breach of the contract's representations and warranties. Under Argan's theory, Western Filter could not bring a claim without the Survival Clause, and, even with the Survival Clause, Western Filter only had one year after closing to bring such a claim.

*Western Filter*, 540 F.3d at 953.

This language suggests that the closing date as the claims deadline for warranties and representations served as the premise to Argan's other theories, not that it *was* Argan's theory. The contract at issue in *Western Filter* contained an express survival clause. The SPA in this case does not.

clause analyzed in *Western Filter* is essentially identical to the clause at Section 7.3(a) in

the SPA.  That clause states:

> 7.3 <u>Conditions to Obligations of the Buyer</u>.  The obligations of [Planet] to consummate the transactions contemplated hereby are further subject to the satisfaction (or waiver) at or prior to the Closing of the following conditions:
>
> (a) <u>Representations and Warranties</u>. The representations and warranties of [Ingwersen] contained in Section 3 of this [SPA] shall be true and correct in all respects at the date hereof and shall be true and correct in all respects as of the Closing Date as if made at and as of such time, excepts for (I) changes permitted or contemplated by this [SPA], (ii) representations and warranties which are as of a specific date and (iii) failures to comply with the foregoing condition that individually or in the aggregate would not have a Material Adverse Effect.
>
> (b) <u>Performance of Obligations</u>. [Ingwersen] shall have performed in all material respects its covenants and obligations under this [SPA] required to be performed by it at or prior to the Closing pursuant to the terms hereof[.]

(Filing No. 63-4 at 36.)

This language is clear that Ingwersen's representations and warranties were subject

to Planet's satisfaction or waiver *at or prior to* the Closing.  The parties have not identified

a specific survival clause, and the structure of the SPA does not suggest that the parties

intended one.  Planet claims that although the parties did not include a survival clause,

they also did not include a "no-survival clause."  (Filing No. 167 at 11.)  In other words,

Planet claims that the construction of the SPA suggests that the parties intended that

Planet's claims survive closing.  Planet contends that this intent is evidenced by (1) the

inclusion of indemnification provisions that apply to both first- and third-party claims; (2) the

Claims Period provisions defining the period in which claims for breach of representations

and warranties may be brought under the indemnification clause; (3) the provision stating

that indemnification claims for inaccurate representations and warranties are unaffected

by Planet's due diligence; and (4) Ingwersen's reaffirmation and certification of his representations and warranties simultaneously at Closing.  For the reasons discussed below, the Court reaches a different conclusion.  That is, for the following reasons, each of these provisions suggests that Ingwersen's representations and warranties were a condition of Closing and that Ingwersen could not be sued for a later-discovered breach.[4]

## 1.    Indemnification Provisions

Planet first claims that because the SPA contained an indemnification provision, the parties intended that Planet's claims for breach of representation and warranties survived Closing.  Ingwersen counters that the SPA only contemplated third-party indemnification claims.  The Court concludes that the indemnification provisions do not provide for first-party claims and that Planet has not stated claims that fall outside the indemnification provisions.

### a.    Construction of the Indemnification Provision

Planet's claims against Ingwersen are based on the indemnification provisions of the SPA at Section 9.  The introduction to Section 9 states:

Section 9.  Indemnification.

9.1 Indemnification Obligations of the Seller.  Except to the extent otherwise provided in this Section 9, [Ingwersen] shall indemnify, defend, and hold harmless [Planet] and its officers, directors, employees, and Affiliates, and each of the heirs, executors, successors, and assigns of any of the foregoing (collectively, the "Buyer Indemnified Parties") from, against, and in respect of any and all Losses[5] arising out of or relating to:

---

[4]  Planet's claims are not based on any theory of fraud in the inducement.

[5] Loss or Losses is defined in Section 11.6(q), as:

. . . any and all claims, liabilities, obligations, losses, costs, expenses,

9

(a) any breach or inaccuracy of any representation or warranty made by [Ingwersen] in this [SPA] or any certificate or document delivered pursuant to this [SPA]; or

(b) any breach of any covenant, agreement, or undertaking made by [Ingwersen] in this [SPA].

In determining whether any Losses have occurred due to any breach of any representation or warranty of [Ingwersen] set forth in this [SPA], the terms "material," "Material Adverse Effect" and other express qualification based upon materiality shall be disregarded and given no effect.

(Filing No. 63-4 at 39 (footnote added).)

Planet construes this language as contemplating both first-party claims as well as third-party claims, meaning Ingwersen must indemnify losses suffered directly by Planet as well as losses claimed by third parties against Planet. Planet lists fourteen provisions in the SPA that could only be the basis of first-party claims and several other provisions in the SPA that give rise to both first- and third-party claims.[6] Planet reasons that the language of Section 9.1(b) states that the obligation to indemnify arises from "any breach or inaccuracy of any representation or warranty made by [Ingwersen] in this [SPA] or any certificate or document delivered pursuant to this [SPA]." Thus, Planet argues, the word "any" literally encompasses any claim, including those by Planet.

---

penalties, fines, judgments, and damages whenever arising or incurred (including, without limitation, amounts paid in settlement, costs of investigation, reasonable attorneys' and accountants' fees and expenses, removal costs, remediation costs, closure costs and expenses of investigation and ongoing monitoring) incurred.

[6] Planet lists the provisions in footnotes, but does not offer an explanation as to how each provision would give rise to either a first-party claim or both first- and third-party claims.

In support of its interpretation, Planet cites *BP Products North America, Inc. v. JV Indus. Co.*, No. H-07-2369, 2010 WL 1610114, at *1 (S.D. Tex. April 21, 2010). In *BP Products*, the court addressed the indemnity provision in a petroleum refinery contract and noted that "[g]enerally, an indemnity provision 'does not apply to claims between the parties to the agreement but obligates the indemnitor to protect the indemnitee against claims brought by third parties.'" *Id.* at *4 (quoting *Kellog Brown & Root Intern., Inc. v. Altanmia Comm. Mktg. Co., W.L.L.*, No. H-07-2684, 2008 WL 5114962, at *20 (S.D. Tex. Dec. 3, 2008)). The court did state, however, that "indemnity agreements can be written to require the parties to 'indemnify each other against claims they later assert against each other.'" *Id.* (quoting *Ganske v. Spence*, 129 S.W.3d 701, 708 (Tex. App. -Waco 2004, no pet.)). The indemnity provision at issue stated:

> Contractor [J.V.] shall be solely responsible for all labor, materials, equipment and work until the Work is accepted by Company [BP]. Contractor shall reimburse [BP] for, defend, indemnify, and hold [BP] harmless from and against any and all liability, costs (including reimbursement of all attorney fees and other costs of defense), loss, damage, expense, claims . . . , suits, fines, and penalties on account of any and all bodily injuries or death to any persons . . . or damage to, or loss or destruction of any property (including without limitation, the Work and the property of [J.V. and BP] ) arising directly or indirectly out of or in connection with the performance of this Contract, whether caused or contributed to in whole or in part by the concurrent, joint, active, or passive negligent act or commission of [BP or J.V.], except that [J.V.] assumes no liability for the sole negligent acts of [BP]. [BP] reserves the right to retain sufficient funds to cover this obligation.

Id. at *3.

The court determined that this provision encompassed first-party claims because it specifically and expressly provided for indemnification for losses caused by property damage or destruction. The court reasoned that BP was "the most likely, and perhaps the

11

only, party to assert a claim for losses caused by damage to BP's property." *Id.* at *5. Thus, because the contract specifically mentioned the property of a party to the contract, its clear language permitted first-party claims.

The language in the SPA does not specifically provide for indemnification of claims arising from damage to Planet's property, nor does it include any indication that the parties meant to encompass more than third-party claims. "Indemnity agreements are construed strictly against the party seeking indemnification." *Angelo Iafrate Const., LLC v. Potaschick Const., Inc.*, 370 F.3d 715, 721 (8th Cir. 2004). Further, "the intent of the indemnitor's obligation to indemnify against [the losses] must be expressed in *clear and unequivocal terms and to such an extent that no other meaning can be ascribed*." *Id.* (citation omitted) (emphasis added). The language of the SPA does not clearly allow first-party claims, and is similar to agreements that courts have determined to preclude first-party indemnification claims. For example, the indemnification provision analyzed in *Travelers Indemnity Co. v. Dammann & Co.*, Inc., 594 F.3d 238, 254 (3d Cir. 2010), stated:

> Seller agrees to defend, indemnify and hold harmless Buyer from all claims, actions, losses, damages and expenses resulting from any injury to persons, damage to property or action by any regulatory agency, arising out of or in any way associated with the design, installation, and/or operation of any production formulation, packaging, or support equipment (including equipment owned by Seller, Buyer or Third Parties), used in the production, processing or handling of the product(s) sold hereunder and all raw materials used in the production[.]

The Third Circuit in *Travelers Indemnity* stated that it was required to avoid any interpretation of the contract that would render any words meaningless. *Id.* at 255; *cf. Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 427 (Neb. 2010) ("A contract is viewed as a whole in order to construe it . . . and all writings forming part of the

12

same transaction are interpreted together").  Specifically, the court was required to "interpret the word 'indemnify' in relation to the words 'defend' and 'hold harmless.'" *Id.* The Third Circuit concluded that the clause was a requirement that third-party liability exist to trigger the indemnification clause.  *Id.* The court reasoned that the seller in the contract couldn't defend the buyer from itself, nor could it hold the buyer harmless for the buyer's own wrong.  Consequently, the seller could not indemnify the buyer for the buyer's own loss. *Id.*

The wording of the indemnification provision in *Travelers Indemnity* is similar to Section 9.1 of the SPA.  The applicable language states "[Ingwersen] shall indemnify, defend, and hold harmless [Planet] and its officers, directors, employees, and Affiliates, and each of the heirs, executors, successors, and assigns . . . ."  Regardless of the losses that Ingwersen must indemnify, the Court must read the provision in light of the other terms and interpret the word "indemnify" with the words "defend" and "hold harmless."  Just as the Third Circuit concluded in *Travelers Indemnity*, Section 9.1 cannot be read to require Ingwersen to defend Planet against itself, or hold Planet harmless for Ingwersen's wrongdoing against itself.  Any interpretation of Section 9.1 that requires Ingwersen to indemnify Planet for Planet's own loss renders the terms "defend" and "hold harmless" meaningless.

Planet further argues that in addition to its terms, the structure of the SPA suggests that first- as well as third-party claims are allowed.  Planet argues that Section 9.3 sets forth the third-party claims procedures because such claims are much more complicated than first-party claims.  Section 9.3 specifically requires "notice by a third party of any claim or the commencement of any action or proceeding with respect to which such Indemnified

13

Party may be entitled to receive payment from the other party for any Losses . . . such Indemnified Party shall promptly notify [Planet] or [Ingwersen] of such claim. . . ."  Section 9.3 does not mention any procedure for first-party indemnification claims.  Instead, Planet argues, first-party claims procedures are governed by Section 11.1 which described the manner in which "notices" should be made between the parties.  This construction does not present a clear indication that the SPA allows first-party indemnification claims.  To the contrary, the structure indicates that the parties intended Section 9 to encompass third-party claims only, because the notice provision specifically refers to third-parties.  Section 9 does not reference Section 11.1, and there is no direct indication that the notice provisions in Section 11.1 directly apply to first-party indemnification claims.  As noted above, the SPA must be construed against the party seeking indemnification, and the obligation to indemnify must be clear and unequivocal such that "no other meaning can be ascribed."  *Angelo Iafrate*, 370 F.3d at 721.  As the party seeking indemnification, Planet has not shown clear language permitting first-party claims under Section 9.[7]  As such, Planet has no direct indemnification claim against Ingwersen.

>    b.    *Exclusivity Provision*

The interpretation of the indemnification provision is crucial to this case  because Section 9 includes an exclusivity provision that states:

> 9.7 <u>Exclusive Remedy</u>.  Except (a) as provided in Section 10, (b) for breach of any representation, warranty, or covenant as a result of any matter constituting fraud under applicable Law, (c) remedies available under the Seller Ancillary Agreements, the Buyer Ancillary Agreements and the Confidentiality Provisions, (d) enforcement of the Right of First Refusal and the maintenance of the legend on the certificates representing the Buyer's

---

[7] Nor has Planet presented any of its allegations as losses to indemnify a third-party.

>Stock, following the Closing, the indemnification provisions of this Section 9 shall be the exclusive remedy of the parties hereto against any other party with respect to matters arising under or in connection with this [SPA] and the transactions contemplated hereby.

(Filing No. 63-4 at 42.)

The language is clear that, but for the listed exceptions, the parties intended that, after Closing, Section 9 was the exclusive remedy of the parties for matters arising under, or in connection with the SPA.  Planet argues that Section 9.7 should be interpreted to mean that if a claim does not fall within the exceptions listed, it is subject to the Claims Period of Section 9.4 and the Threshold and Cap Amounts of Section 9.5.  However, none of those sections can be interpreted in that manner.   Section 9.7 states that "the indemnification provisions of *this Section 9* shall be the exclusive remedy of the parties hereto."  (Filing No. 63-4 at 42 (emphasis added).) Section 9.4 states that the claims period "shall be the period during which a claim for indemnification may be asserted under *this Section 9* by an Indemnified Party."  (Filing No. 63-4 at 42 (emphasis added).) Similarly, Section 9.5 describes the threshold and cap in terms of all indemnification claims under Section 9.  These sections do not bifurcate indemnification claims in the manner Planet describes.  In other words, the SPA is clear that unless a claim falls within the exceptions listed in Section 9.7, indemnification under Section 9 is the exclusive remedy among the parties after Closing.

Planet also argues that even if Section 9 does not apply to first-party claims, its claims fall within the fraud exception of Section 9.7.  In its Complaints in Case No. 8:09CV263 and Case No. 8:10CV453, Planet alleged that Ingwersen knew the representations and warranties were incorrect and inaccurate, or Ingwersen recklessly

made the representations and warranties without knowing whether they were correct. (Case No. 8:09CV263, Complaint, Filing No. 1 ¶ 18; Case No. 8:10CV453, Complaint, Filing No. 1 ¶ 20.)  This common allegation appears under Planet's claims for breach of duty of good faith and fair dealing, and in any case, is insufficient to allege fraud under Federal Rule of Civil Procedure 9(b).  The Eighth Circuit has stated that "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the [Rule 9(b)]." *BJC Health Sys. v. Columbia Cas. Co.* 478 F.3d 908, 917 (8th Cir. 2007).  Planet asserts Ingwersen's "knowledge" and "recklessness," but Planet's allegations are insufficient to support a claim based on fraud.

It is also noteworthy that Planet's original notice to Ingwersen did not make any claim based on fraud.  In Planet's notice to Ingwersen on May 28, 2009, Planet stated that its purpose was to provide formal notice of Planet's claims against Ingwersen under Section 9 of the SPA.  (Filing No. 63-9 at 1.)  The notice made no reference to fraud, or any claims falling outside the indemnification provisions.  In fact, the notice stated that Planet was "making a claim pursuant to Section 9.1(a) of the [SPA] as a result of the *inaccuracy* of the representations and warranties regarding [Opticard's] financial statements, accounts receivable, and customers set forth in Sections 3.6, 3.19 and 3.24 of the [SPA]."  (*Id*. (emphasis added))

Ingwersen was not put on notice of any claim for fraud or fraud in the inducement. To construe Planet's claims as such would alter the entire posture of the litigation. Because Planet has not alleged fraud, its claims do not fall within the exceptions to Section 9.7.

16

2.      **The SPA Claims Period**

Planet contends that its claims for indemnification survive under Section 9.4 of the

SPA defining the claims period for indemnification:

> 9.4 <u>Claims Period</u>.  For purpose of this Section 9, a '<u>Claims Period</u>' shall be
> the period during which a claim for indemnification may be asserted under
> this Section 9 by an Indemnified Party, which period shall begin on the
> Closing Date and terminate on the third (3rd) anniversary of the Closing Date
> . . . .

(Filing No. 63-4 at 41.)

Planet contends that it and Ingwersen contemplated the possibility of claims

between each other for a specified time following the Closing Date.  However, because the

Court determines that Section 9.1 cannot be read to apply to first-party claims, Section 9.4

cannot be read to specify a claims period for first-party claims.

3.      **Requirement Under the SPA that Representations and Warranties are
        Unaffected by Planet's Due Diligence**

Planet also argues that the SPA puts the burden on Ingwersen to demonstrate the

accuracy of his representations and warranties, regardless of Planet's due diligence.

Specifically, Planet claims that the wording of Section 9.6(e) establishes the parties' intent

to preserve first-party indemnification claims.  Section 9.6(e) states:

> Notwithstanding anything to the contrary in this Section 9.6, no examination,
> inspection or audit of the Properties, financial conditions or other matters of
> [Opticard] and the businesses conducted by [Planet] in connection with this
> [SPA] shall in any way limit, affect or impair the ability of [Planet] to rely on
> the representations, warranties, covenants and obligations of [Opticard] set
> forth herein in order to be identified by [Opticard] set forth herein in order to
> be identified by [Opticard] for any breach hereof.

(Filing No. 63-4 at 42.)

17

Section 9.6(e) does not provide any additional clear and unequivocal language suggesting that Section 9 permits first-party indemnification claims.  While Section 9.6(e) does not limit Planet's ability to rely on Ingwersen's representations and warranties, Planet has not shown that this language overcomes other language in Section 9 that limits indemnification claims to those resulting from claims by third-parties.  In contrast, Section 7.3(h) of the SPA states:

> Due Diligence.  [Planet] shall be satisfied, in its sole discretion, with its financial, legal and business review of [Opticard] and [Ingwersen].

(Filing No. 63-4 at 37.)

This clause was subject to Planet's satisfaction and waiver, as were Ingwersen's representations and warranties.  Thus, if Planet's due diligence created any dissatisfaction with the state of Ingwersen's representations and warranties, Planet could terminate the contract with cause before Closing.  Planet's interpretation would render Section 7.3(h) meaningless if the parties did not intend that 9.6(e) apply solely to third-party claims.  If Planet were allowed to recover from Ingwersen based on its own first-party claims after Closing, despite its due diligence, there would be no reason to include a due diligence requirement under Section 7.3(h) that is "subject to [Planet's] satisfaction (or waiver) at or prior to the Closing."  (Filing No. 63-4 at 36.)  Accordingly, Planet has not shown that Section 9.6(e) manifests a clear intent to allow first-party claims.

**4.    Ingwersen's Closing Certificate**

Planet also contends that Ingwersen was required to reaffirm all representations and warranties simultaneously with Closing by means of Ingwersen's Closing Certificate, and to interpret the SPA to preclude first-party indemnification claims after closing would render

18

the requirement of the Closing Certificate meaningless.  In making this argument, Planet argues that Ingwersen's reliance on the Ninth Circuit's decision in *Western Filter* is misplaced, and that survival of claims may be inferred from the parties' intent.  Regardless of whether survival-of-claims must be specified in a contract, Planet's theory is premised on an interpretation of Section 9 that allows both first- and third-party claims.  Planet states that "[i]n this case, the [SPA] contains an indemnification provision and expressly defines the scope of the indemnification to include all first and third party representations and warranties in the [SPA].  Thus, Ingwersen's representations and warranties survived closing."  (Filing No. 167 at 23.)  However, Planet has not established that the SPA embraces first-party claims in its indemnification clause.  Thus,  the Court cannot infer survival-of-claims based on the grounds suggested by Planet.

**5.     Survival-of-Claims Conclusion**

"When the terms of the contract are clear, a court may not resort to rules of construction" and the court must give the terms of a contract "their plain and ordinary meaning as the ordinary or reasonable person would understand them."  *Deprez v. Continental W. Ins. Co.*, 584 N.W.2d 805, 808 (Neb. 1998).

Planet argues that the language of the SPA suggests that the parties intended claims to survive Closing and for Section 9 to apply to first-party claims.  To the contrary, the SPA includes several provisions indicating that Ingwersen's representations and warranties were subject to Planet's satisfaction at or before Closing.  Further, Section 9 lacks any clear language that it was intended to cover first-party indemnification claims

after Closing.  Therefore, Planet's post-Closing claims against Ingwersen for breach of the SPA are barred by its terms.

**6.    Planet's Claims for Promissory Estoppel, Unjust Enrichment, and Breach of the Duty of Good Faith**

Planet argues that even if its claims for breach did not survive Closing, its alternative theories of unjust enrichment, breach of implied covenant of good faith and fair dealing, and promissory estoppel exist independent of its claims of breach.  Planet argues that Ingwersen was unjustly enriched because he received and retained money from Planet despite breaching numerous warranties and representations in the SPA.  (Filing No. 167 at 26.)  Planet also claims that Ingwersen breached the covenant of fair dealing through his false and incorrect representations and warranties.  (*Id*. at 27.)  Both of these claims are, as described in Section 9.7 of the SPA, matters "arising under or in connection with [the SPA] and the transactions contemplated thereby."  (Filing No. 63-4 at 42.)  As stated in detail above, the indemnification provisions are the exclusive remedy for such claims.  Accordingly, for the reasons already discussed, these claims must also be dismissed.

Planet states that if the Court finds that Ingwersen breached a valid contract, it will no longer pursue its promissory estoppel claims.  The Court concludes that the SPA is a valid contract as it includes all the necessary elements of a contract.  Planet has not argued that the contract is invalid.  Because the SPA is a valid contract, Planet's causes of action are limited to those under the SPA, and its claim based on promissory estoppel likewise will be dismissed.

20

**CONCLUSION**

Because the SPA lacks a survival clause and lacks clear language that its indemnification provisions encompass first-party claims, Planet's claims for breach of the SPA in Case No. 8:09CV263 and Case No. 8:10CV453 are barred by its terms. The remaining claims in each of those cases are similarly barred because they arise under, or in connection with, the SPA.

Accordingly,

IT IS ORDERED:

1.    The Motions for Summary Judgment (Case No. 8:09CV249,  Filing Nos. 61, 158; Case No. 8:09CV263 Filing Nos. 62,159; and Case No. 8:10CV453, Filing No. 44 ) filed by David Ingwersen are granted;

2.    Plaintiff Planet Group Inc.'s Complaint in Case No. 8:09CV263 is dismissed, with prejudice;

3.    Plaintiff Planet Group Inc.'s Complaint in Case No. 8:10CV453 is dismissed, with prejudice;

4.    All other pending motions in Case No. 8:09CV263 and Case No. 8:10CV453 are denied as moot; and

5.    A separate judgment will be entered.

DATED this 21st day of April, 2011.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge

21