IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID D. INGWERSEN, | ) | CASE NO. 8:09CV249 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| PLANET GROUP, INC., and WEST PARTNERS, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |
| | ) | |
| PLANET GROUP, INC., | ) | CASE NO. 8:09CV263 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID INGWERSEN, | ) | |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |
| | ) | |
| PLANET GROUP, INC., | ) | CASE NO. 8:10CV453 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID INGWERSEN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion for Summary Judgment in Case No. 8:09CV249 (Filing No.75), and the Motions in Limine (Filing Nos. 109, 165) filed by Planet Group Inc., and West Partners, LLC. Also before the Court are the Motion in Limine (Filing No. 118) and the Objection to the Exhibit List (Filing No. 120) filed by David Ingwersen. For the reasons discussed below, the Motion for Summary Judgment will be denied. The

Court will grant the Motions in Limine and Objections to Exhibit List in part and deny them in part, without prejudice to reassertion at the time of trial.

## FACTUAL AND PROCEDURAL BACKGROUND

The Parties' Statements of Undisputed Facts, corresponding responses, and Indexes of Evidence show that the following facts related to this Motion are not in dispute:

**1.    Share Purchase Agreement and Employment Agreement**

David D. Ingwersen ("Ingwersen") is a resident of Maricopa County, Arizona. Planet Group, Inc. ("Planet") is a Nebraska corporation with its principal place of business in Omaha, Douglas County, Nebraska. Planet is a holding company for diverse technology and business solutions companies. West Partners, LLC ("West") is a California limited liability company, qualified to do business in Nebraska.   Ingwersen and Planet entered into a Share Purchase Agreement ("SPA") executed on November 28, 2007.  The parties agree that the SPA is a valid and enforceable contract. Through the SPA, Planet generally acquired certain intellectual property of Opticard Payment Systems, Inc. ("Opticard"), which Planet wanted to use with its existing technology. Ingwersen held stock in Opticard, and, through the SPA, sold stock Planet.[1]  The SPA had an effective Closing Date of January 1, 2008 (the "Closing").

Contemporaneous with the SPA, the parties entered into an Employment Agreement with an effective date of January 1, 2008, whereby Planet would employ Ingwersen.  The Employment Agreement contained a provision delineating the reasons

---

[1] Copies of the SPA appear in several docket entries throughout the cases, the following provisions are quoted from Filings 63-4 and 63-5 in Case 8:09CV249.

Ingwersen could be terminated by Planet "for cause." Specifically, Paragraph 4 of the Employment Agreement states, in relevant part:

> This Agreement may be terminated by the Company [Planet] for "Cause." The term Cause shall mean the Employee's [Ingwersen's] discharge from employment with the Company and/or its affiliates due to the Employee's; . . . (vi) an uncured violated or breach of the terms and conditions of that certain Share Purchase Agreement dated November 28, 2007 between the parties . . . . Provided, however, that if termination is made pursuant to part (iv), (vi) or (vii) above, the Company must first notify the Employee in writing that the Company intends to discharge the Employee for Cause, state the reason (or specific Cause), and give the Employee at least thirty (30) days to cure such breach or reason for termination in a satisfactory manner, as reasonably determined by the Company.

(Filing No. 63-6 at 1-2.)

Ingwersen was employed by Planet from the effective date of the Employment Agreement until April 20, 2009. On April 20, 2009, Ingwersen was asked to meet with Dennis O'Brien and Merri Wees, Planet's Vice-President of Corporate Services. During the meeting, Ingwersen was terminated immediately from his employment with Planet. At the time of his termination, Planet notified Ingwersen that he was being terminated without cause, and he was provided with a proposed severance agreement. The terms of the proposed severance agreement continued to be negotiated in the days following the meeting; however, no severance agreement was ever executed by the parties. Planet claims that, after Ingwersen's termination on April 20, 2009, it provided at least two paychecks to him on or about April 30, 2009, and May 15, 2009, totaling $10,865.21. Ingwersen denies that he was paid anything beyond his termination date.

**2.      Allegedly Breached Provisions of the SPA**

Planet claims that it had cause under the Employment Agreement to terminate Ingwersen because Ingwersen breached several provisions of the SPA. In its Motion for

3

Summary Judgment, Planet asks the Court to determine, as a matter of law, that Ingwersen was in breach.  The applicable provisions of the SPA are summarized below.[2]

      a.    *Accounts Receivable*

Under Section 3.6(a) of the SPA, "All financial schedules listed in this Section are hereinafter referred to, collectively, as the 'Financial Statements.'"  Section 3.6(b) of the SPA further states, "Copies of the issued Financial Statements are attached and the future Financial Statements will be attached when received pursuant to Section 3.6(a) as <u>Section 3.6 of the Seller Disclosure Schedule</u>.  Any exceptions to GAAP are set forth on <u>Section 3.6 of the Seller Disclosure Schedule</u>, the balance sheets included in the Financial Statements fairly present, in all material respects, the financial condition of the Company as of the respective dates thereof . . . ."  Section 7.3(a) of the SPA states "The representations and warranties of the Seller contained in Section 3 of this Agreement shall be true and correct in all respects at the date hereof and shall be true and correct in all respects as of the Closing Date as if made at and as of such time . . . ."

Section 3.19(a) of the Agreement states, "Section 3.19(a) of the Seller Disclosure Schedule sets forth all of the company's accounts and notes receivable (the 'Receivables'). All Receivables due and uncollected of the Company reflected on the most recent financial statement or arising subsequent to the date of the most recent financial statement (I) have arisen from bona fide transactions in the ordinary course of business of the Company; and (ii) represent valid obligations due to the Company enforceable in accordance with their terms."  Upon execution of the SPA, Schedule 3.19 was attached and included a list of

---

[2] All references to the SPA are taken from Filing No. 63-4.

Aged Receivables listed by customer.  Planet claims that Ingwersen breached the SPA by misrepresenting the collectibility of certain accounts receivable.

  *b.*  *Customers*

Section 3.24 of the SPA states, "The Company's top thirty (30) customers by gross sales for the period July 1, 2006 through August 17, 2007 are set forth in Section 3.24 of the Seller Disclosure Schedule. Except as set forth in Section 3.24 of the Seller Disclosure Schedule, since the date of the Most Recent Financial Statement, none of such customers have canceled, terminated or otherwise materially altered its relationship with the Company . . . ." Schedule 3.10 was also attached and included a list of Opticard's customer contracts.

On the list of contracts appear two entries for Mimi's Café from 2000 and 2006. Planet claims that Ingwersen knew in June 2007 that Mimi's Café might cease using Opticard's services and move to a different provider, but failed to disclose that fact.  The schedule also states that customer Books-A-Million signed a service agreement with Opticard in August 2000.  Planet claims that Books-A-Million has not done business with Opticard since at least July 2007.  Ingwersen counters that Opticard knew Books-A-Million would no longer be a customer in May 2007, and advised Planet of this fact.  Planet claims Ingwersen breached each of these provisions because several customer contracts listed were either no longer Opticard customers, or planning to leave Opticard, at the time of Closing.

  *c.*  *Attorney Fees*

Section 5.5 of the SPA states, "The Seller will pay all costs and expenses incurred by the Seller or the Company in connection with the transactions contemplated by this

5

Agreement (including, without limitation, attorneys' and accountants' fees and expenses). The Buyer shall bear all such costs and expenses incurred by it in connection with the transactions contemplated by this Agreement." Planet claims that Ingwersen did not reimburse Opticard for certain payments it made to its attorney in connection with the SPA.

     d.    *Sales Tax*

Section 3.11 of the SPA states, "Either Seller or the Company (I) has timely filed or caused to be filed on a timely basis with the appropriate taxing authorities all material Tax Returns required to be filed by or with respect to the Company, or with respect to which the Company could have liability, and (ii) has paid or made adequate provision for the payment of all Taxes shown to be due on such Tax Returns. Such Tax Returns are correct and complete in all material respects." Planet claims that Opticard failed to pay all sales and use taxes due and owing to the State of Arizona in 2006 and 2007. Planet also claims that Opticard has "promptly paid" these taxes, but does not specify when they were actually paid.

     e.    *Potential Claims*

The SPA included Section 3.6(c) which states:

(c) No Undisclosed Material Liabilities. Except as specified in Section 3.6 of the Seller Disclosure Schedule and liabilities incurred in the ordinary course of business consistent with past practice since the date of the last Financial Statement attached hereto as of the date of this [SPA] (the "Most Recent Financial Statement"), there are no liabilities of a Company of any kind whatsoever (whether accrued, contingent, absolute, due, to become due, determined, determinable or otherwise) required by GAAP to be reflected on a balance sheet except for liabilities or obligations reflected or reserved against in the Most Recent Financial Statement.

Planet claims that Ingwersen breached this Section, as well as Sections 3.8, 3.10, and 3.23 by failing to disclose a potential claim involving a company called Inter-Tel, now

referred to as Mitel. Mitel claims that Opticard owes it minimum monthly long distance charges from June 2007 through June 2, 2010, despite the fact that Opticard does not use, and since March of 2007 has not used, Inter-Tel as its long distance carrier. Through a collection agency, Mitel claims charges in the amount of $30,442.81. The collection agency sent a letter to Opticard's predecessor, Open Payment Technologies, in September 2009. Mitel still claims an interest in these charges.

3.     **Scope of Planet's Partial Motion for Summary Judgment**

Planet seeks summary judgment on twelve different issues as they relate to Planet's defense of Ingwersen's claims. First, that Planet's post-termination evidence of Ingwersen's "pre-termination" breach of the Employment Agreement can support a termination-for-cause. Second, that Ingwersen was terminated "for cause" pursuant to Paragraph 4(vi) of the Employment Agreement. Third, that Ingwersen's obligations under Section 9.6(e) of the SPA are absolute and, if the representations and warranties are breached, Ingwersen is liable for damages in an amount to be proven at trial.[3] Fourth, that Ingwersen breached Section 3.6 of the SPA by misrepresenting the financial condition of Opticard by showing that the accounts receivable were collectible when no reserve for uncollectible accounts receivable was included on the balance sheet and no bad debt expenses reflected in the income statement. Fifth, that Ingwersen breached Section 3.19 of the SPA by misrepresenting the status and collectibility of accounts receivable, which were clearly uncollectible. Sixth, that Ingwersen breached Section 3.10 of the SPA by

---

[3] The applicability of Section 9.6(e) and all of Section 9 of the SPA is addressed at length in the Court's previous Memorandum and Order, and Judgment (Filing Nos. 183, 184). The Court will not repeat its analysis here.

identifying "existing" contracts with Mimi's Café and Books-A-Million even though such contracts had been cancelled. Seventh, that Ingwersen breached Sections 3.7(a) and 3.24 of the SPA by failing to disclose that Mimi's Café, Books-A-Million, Hypercom Corporation, and Special System Services were no longer Opticard customers. Eighth, that Ingwersen breached Section 5.5 of the SPA by failing to pay all of his and Opticard's attorney fees relating to the Agreement. Ninth, that Ingwersen breached Section 3.11 of the SPA by failing to have Opticard pay all sales taxes due and owing to the State of Arizona prior to Closing. Tenth, that Ingwersen breached Sections 3.6(c), 3.8, 3.10, and 3.23 of the SPA by failing to disclose the potential claim that Inter-tel, now known as Mitel, has against Opticard. Eleventh, that Ingwersen's claim for "tortious interference against Planet Group for interference with payment due on a promissory note" should be summarily dismissed with prejudice by this Court. Twelfth, that Planet Group should be awarded such other, further, and different relief as the Court deems just and equitable.

**STANDARD OF REVIEW**

A court should grant a motion for summary judgment "if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Fu. v. Owens*, 622 F.3d 880, 882 (8th Cir. 2010) (citing *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007)). The proponent for a motion for summary judgment "'bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgersen v. City*

of Rochester*, 605 F.3d 584, 594 (8th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In response to the proponent's showing, the opponent has an "obligation to come forward with specific facts showing that there is a genuine issue for trial." *Dahl v. Rice Cnty. Minn.*, 621 F.3d 740, 743 (8th Cir. 2010) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "[T]he nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010) (quoting *Matsaushita Elec. Indus. Co.*, 475 U.S. at 586).

## DISCUSSION

**1.    Post-Termination Evidence of Ingwersen's Pre-Termination Breach**

Planet argues that evidence acquired of Ingwersen's alleged pre-termination misconduct after Ingwersen's termination supports a termination-for-cause under the Employment Agreement.[4] In support of this assertion, Planet cites *O'Day v. McDonnell Douglas Helicoper Co.*, 959 P.2d 792, 796 (Ariz. 1998), which held that "after-acquired evidence of employee misconduct is a defense to a breach of contract action for wages and benefits lost as a result of discharge if the employer can demonstrate that it would have fired the employee had it known of the misconduct." The Arizona Supreme Court stated that the "overwhelming majority of courts holds that if an employer can demonstrate that it would have fired an employee had it known of prior misconduct, then the employee's claim for breach of contract is barred or, put differently, the prior misconduct excuses the

---

[4] Planet asserts, unchallenged by Ingwersen, that the Employment Agreement is governed by Arizona law. Further, Paragraph 16.3 states that the Employment Agreement is "governed and construed in accordance with the laws of the State of Arizona." (Filing No. 63-6 at 6.)

9

employer's breach." *Id.* at 795.  The court also noted that this "result in contract merely reflects the private bargain between the parties." *Id.* at 796.  Conversely, the court stated that "if the employee can demonstrate that the employer knew of the misconduct and chose to ignore it, then he will defeat the employer's attempted use of the after-acquired evidence and defense of legal excuse." *Id.*

The Court acknowledges that under *O'Day*, an employer may use after-acquired evidence of misconduct as a defense to a breach-of-contract action for wages and benefits, if the employer can show that it would have fired the employee had it known of the misconduct.  However, the ruling in *O'Day* is inapplicable to the present case for at least two reasons.  First, Planet has not clearly established that evidence of Ingwersen's breach of the SPA was acquired after Ingwersen's termination.  Thus, there is a question of fact as to whether Planet knew of the alleged breaches, and chose to ignore them.  Second, because Planet's defense is based on the Employment Agreement, Planet is also bound by its provisions.  Planet has not shown that it gave Ingwersen notice or opportunity to cure under the applicable provisions of the Employment Agreement.

      a.     *After-Acquired Evidence*

To trigger the legal-excuse defense with after-acquired evidence, Planet must demonstrate that it learned of Ingwersen's misconduct *after* his termination without cause.  The timing of the discovery of this evidence is crucial because, if Planet knew of Ingwersen's misconduct before termination and chose to ignore it, the defense arising from after-acquired evidence does not apply.  *Id.*  That is, the discovery of at least one of Ingwersen's alleged breaches of the SPA must have occurred post-termination.  Further,

Planet must show that had it known of the breach, Ingwersen would have been terminated. The manner in which Planet discovered evidence of Ingwersen's misconduct is not clear from the record. The Affidavit of Merri Wees states that Planet learned of Ingwersen's misconduct after his termination. (Filing No. 78-2 ¶ 10.) This misconduct included Ingwersen's alleged breach of the SPA, his formation of MerchantSellect, Inc., his operation of Tiosk company, and providing of office space to non-Opticard representatives unknown to Planet. (*Id.*) Because Planet's present Motion is limited to questions of Ingwersen's misconduct in breaching various provisions of the SPA, the Court will not address evidence of any other misconduct.

Despite the conclusory statement that evidence of Ingwersen's misconduct was acquired after his termination, there is at least a question of fact as to when Planet became aware of the alleged breaches of the SPA. First, regarding any uncollectible accounts receivable, John Morey, Planet's CFO, testified that it had become aware of at least some uncollectible accounts in 2008, or had reservations about the collectibility of certain accounts both before closing and in 2008. (Morey Dep., Filing No. 93-2 at 38:11-39:17.) Thus, as soon as 2008, Planet was aware that some accounts might not be collectible. If Planet and Opticard employees became concerned about the collectibility of certain accounts in 2008, there is a material issue of fact as to whether Planet became aware of Ingwersen's alleged breach of the SPA, and chose to ignore it, before his termination in April 2009.

Similarly, regarding lost customers, the Affidavit of Rex France, a Senior Account Manager for Opticard, stated that Opticard sent its last invoice to Mimi's Café in April 2008. (Filing No. 78-4 ¶ 7.) France also stated that he was informed in July 2007, that Books-A-

Million was no longer an Opticard customer. (*Id*. ¶ 8.) Planet has not indicated to the Court that other evidence of breach regarding lost customers came to Planet's attention after Ingwersen's termination. Regarding unpaid attorneys fees, Planet states claims that Opticard made payments for attorney fees relating to the SPA between January and May 2008. Thus, the Court cannot conclude that Planet only became aware of these payments after Ingwersen's termination if Opticard paid them as late as May 2008.

Planet's best evidence that it acquired information about misconduct after Ingwersen's termination relates to his alleged breach of the SPA in connection with non-payment of sales and use taxes, and the claim against Opticard. However, the record is still unclear as to the timing of Planet's knowledge of each of these. The Affidavit of Merri Wees states that Opticard failed to pay sales and use taxes owed to the State of Arizona in 2006 and 2007. (Filing No. 78-2 ¶ 12.) Wees thereafter states that it was determined that Opticard owed $1,424.23, which was "promptly paid." (*Id*.) Though the letters in Planet's Index of Evidence at Filing No. 63-26 reflect a balance due as of August 17, 2009, the record does not indicate when Planet or Opticard first became aware of the obligation. Similarly, regarding the Mitel claim, the letter from the collection agency at Filing No. 63-25 of Planet's Index is dated September 18, 2009. However, the letter also refers to "our previous letter regarding your delinquent account." (*Id*.) It is unclear whether Planet or Opticard became aware of the claim by Mitel after Ingwersen's termination.

In sum, even if Planet can assert an after-acquired-evidence defense to Ingwersen's claims for breach of the Employment Contract, Planet has not shown that evidence of Ingwersen's breach of the SPA was not acquired until after his termination. Therefore, a triable issue of fact remains as to whether Planet would have terminated Ingwersen had

it known of any particular breach, or whether Planet knew of Ingwersen's misconduct and chose to ignore it. If Ingwersen is able to demonstrate that Planet knew of a breach and chose to ignore it, he defeats Planet's attempted use of the after-acquired-evidence defense. *O'Day*, 959 P.2d at 796.

> b. *Ingwersen's Right to Cure Under the Employment Agreement*

Even assuming Planet has after-acquired evidence of misconduct by Ingwersen, supporting its defense of legal excuse, it still must comply with its obligations under the Employment Agreement. As the Arizona Supreme Court stated in *O'Day*, the result of the after-acquired evidence rule is one in contract, and "merely reflects the private bargain between the parties." *Id.* The court also stressed that the legal-excuse defense based on after-acquired evidence only excuses the employer from its *post-termination* duties under the contract. *See id.* ("We emphasize that the non-breaching party is discharged only from its *remaining* duties of performance) (emphasis in original) (citing Restatement (Second) of Contracts § 237 (1979)). In other words, although after-acquired evidence of Ingwersen's termination may justify a "for cause" dismissal under the Employment Agreement, it did not excuse Planet's obligations under the contract that would arise prior to termination.

Planet does not request the Court to evaluate the sufficiency of whether it could terminate Ingwersen for cause. Planet's Motion is based on the narrow proposition that "if this Court determines that Ingwersen breached the Share Purchase Agreement in any manner that is outlined in [Planet's] original Brief, Planet Group has post-termination acquired evidence that can support a 'for cause' termination of Ingwersen and the

13

Employment Agreement." (Reply Br., Filing No. 99 at 5.) This Motion relates solely to Paragraph 4 of the Employment Agreement which states that termination for cause includes "(vi) an uncured violated or breach of the terms and conditions of that certain Share Purchase Agreement dated November 28, 2007 between the parties." (Filing No. 63-6 at 2.) However, Paragraph 4 also requires that:

> . . . if termination is made pursuant to part (iv), (vi) or (vii) above, the Company must first *notify* the Employee in writing that the Company intends to discharge the Employee for Cause, state the reason (or specific Cause), and give the Employee at least thirty (30) days to *cure such breach* or reason for termination in a satisfactory manner, as reasonably determined by the Company.

(*Id.*(emphasis added).)

Compliance with the notice and right-to-cure provisions of Paragraph 4 of the SPA were required before termination for cause arising out of Ingwersen's breach of the SPA. This provision was part of the parties' agreed-upon exchange, namely that Ingwersen could not be terminated for cause without notice and the opportunity to cure any breach of the SPA. It would be inequitable, and contrary to the parties' own agreement, to require Planet to furnish Ingwersen notice of a breach of the SPA if evidence had been discovered before termination, but release Planet from these obligations for evidence of breach discovered post-termination. To the extent Planet seeks to excuse its termination of Ingwersen based on his alleged breach of the SPA, it has not shown that he was given an opportunity to cure any alleged breach. Planet has not identified any other language in the Employment Agreement or in case law that would excuse its obligation to provide notice and an opportunity to cure. Accordingly, even if post-termination evidence of pre-termination wrongdoing could excuse Planet's termination of Ingwersen without cause, the Court

cannot conclude as a matter of law that Planet would also be excused from its corresponding pre-termination obligations under the Employment Agreement.

**2.  Breaches of the SPA**

Having determined that issues of material fact remain as to Planet's defenses under the Employment Contract, the Court will not address the individual, alleged breaches of the SPA. In its Brief, Planet states that "[i]f this Court determines that as a matter of law, (a) Planet Group's post-termination acquired evidence of Ingwersen's 'pre-termination' misconduct can support a 'for cause' termination and (2) finds that Ingwersen breached the Agreement in any of the ways described herein, Planet Group has "cause" to terminate Ingwersen's Employment Agreement." The Court has determined that in the context of this Motion, Planet has not shown that post-termination-acquired evidence of Ingwersen's pre-termination misconduct can support a for-cause termination. Each of Planet's requests for summary judgment on breaches of the SPA underlies Planet's request for summary judgment on the issue of whether Ingwersen was terminated for cause under Paragraph 4(vi) of the Employment Agreement. Thus, for the purposes of this Motion, it is premature to address Ingwersen's alleged breaches of the SPA.

**3.  Tortious Interference**

Ingwersen has filed a Partial Satisfaction of Judgment regarding his Fourth Cause of Action for tortious interference. Accordingly, for clarity in the record, that cause of action is dismissed, with prejudice.

**4.  Motions in Limine**

For the reasons stated in this Memorandum and Order and the Court's previous Memorandum and Order, and Judgment (Filing Nos. 183, 184), the motions in limine and

objections to exhibit lists are granted in part as stated below.  They are otherwise denied without prejudice to reassertion at the time of trial.  Accordingly,

IT IS ORDERED:

1. The Partial Motion for Summary Judgment (Filing No.75) filed by Planet Group Inc., and West Partners, LLC, is granted in part as follows:

    a. The Fourth Cause of Action in David Ingwersen's Complaint (Filing No. 1), is dismissed, with prejudice,

    b. The Motion for Partial Summary Judgment is otherwise denied;

2. The Motion in Limine (Filing No. 109) filed by Planet Group, Inc. and West Partners, LLC, is granted as follows:

    a. Any representative of David Ingwersen and his counsel shall not make any reference or statement displaying any exhibits or otherwise presenting any of the following matters to the jury, whether in voir dire questioning, opening statements, questions and answers during examination, offering exhibits or in final arguments at trial that reference: David Ingwersen's fourth claim for relief (Tortious Interference with Payment Due on Promissory Note) because such note has been paid in full, and that claim is withdrawn;

    b. The Motion is otherwise denied without prejudice to reassertion at the time of trial;

3. The Motion in Limine (Filing No. 118) filed by David Ingwersen, is granted as follows:

   a. Any representative of Planet Group, Inc., and West Partners LLC, and their counsel, shall not make any reference or statement displaying any exhibits or otherwise presenting any of the following matters to the jury, whether in voir dire questioning, opening statements, questions and answers during examination, offering exhibits or in final arguments at trial that Planet Group has any first-party claim against Ingwersen for alleged inaccurate representations or warranties in the Share Purchase Agreement concerning Opticard customers, accounts receivable, or attorney fees incurred prior to closing of the Share Purchase Agreement entered into by the parties on November 28, 2007;

   b. The Motion is otherwise denied without prejudice to reassertion at the time of trial;

4. The List of Reserved Objections of David Ingwersen to Designated Exhibits of Planet Group, Inc., and West Partners, LLC. (Filing No. 120) is overruled without prejudice to reassertion at the time of trial; and

5. The Motion in Limine (Filing No. 165) filed by Planet Group, Inc., is denied as moot.

DATED this 22nd day of April, 2011.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge